[Cite as *State v. Jones*, 2021-Ohio-2601.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

STATE OF OHIO,                          :
                                        :    Case Nos. 20CA2, 20CA3, 20CA4
    Plaintiff-Appellee,               :
                                        :
    v.                                :    DECISION AND JUDGMENT
                                        :    ENTRY
JEFFERY W. JONES,                       :
                                        :    **RELEASED: 07/26/2021**
    Defendant-Appellant.              :
_____

APPEARANCES:

Kathryn Cornelius-Blume, Lancaster, Ohio, for Appellant.

Ryan R. Black, Hocking County Prosecuting Attorney, and Ryan W. Stickel, Assistant Hocking County Prosecutor, Logan, Ohio, for Appellee.
_____

Wilkin, J.

{¶1} This is a consolidated appeal from three Hocking County Court of Common Pleas judgments memorializing jury verdicts that found appellant, Jeffery W. Jones, guilty of multiple criminal offenses, and the accompanying entries that sentenced him to an aggregate prison term of 20 to 28 ½ years.

{¶2} In case no. 20CA2, the trial court imposed a 12-month prison sentence for aggravated possession of drugs to be served concurrent to the prison sentences in case nos. 20CA3 and 20CA4. Appellant asserts a single assignment of error in this case: appellant's conviction for aggravated possession of drugs is against the manifest weight of the evidence.

{¶3} In case no. 20CA3, the trial court imposed a 12-month prison sentence for breaking and entering to be served consecutive to the prison

sentence in case no. 20CA4.  Appellant has not asserted any assignments of error in this case.

{¶4} In case no. 20CA4, the trial court imposed a 19 to 28 ½ year prison sentence for kidnapping and attempted rape to be served consecutive to the 1-year prison sentence in case no. 20CA3, for an aggregate prison term of 20 to 28 ½ years.  Appellant asserts five assignments of error in this case: (1) the trial court violated appellant's Fifth Amendment rights when it failed to merge appellant's attempted rape and kidnapping convictions, (2) there was insufficient evidence presented at trial to convict appellant of kidnapping, (3) appellant's convictions for attempted rape, kidnapping, and abduction were against the manifest weight of the evidence presented at trial, (4) the trial court abused its discretion when it excluded evidence to impeach the alleged victim, and (5) the trial court erred as a matter of law, whereas appellant's sentence was contrary to law.

{¶5} Having reviewed the record, appellant's arguments, and the applicable law, in case no. 20CA2, we overrule appellant's sole assignment of error.  In case no. 20CA4, we sustain appellant's first assignment of error and remand for resentencing, overrule his next three assignments of error, and decline to rule on his fifth assignment of error because it has been rendered moot by our decision sustaining appellant's first assignment.  Therefore, we affirm in part, and reverse in part, the trial court's judgment entries herein, and remand this cause for the trial court to merge appellant's convictions for attempted rape and kidnapping and to resentence appellant accordingly.

{¶6} We will address appellant's appeal by case number, starting with case no. 20CA2 and then case no. 20CA4.

## 1. Case No. 20CA2

### BACKGROUND

{¶7} The state charged appellant with aggravated possession of drugs (Methamphetamine) in violation of R.C. 2925.11(A) & (C)(1)(a), a fifth-degree felony. During appellant's trial, Officer Scott Mingus, of the Logan Police Department, testified that on the evening of December 11, 2018, he stopped a blue Pontiac because its license plate indicated that it belonged to a silver Honda. The stop was recorded on both the officer's cruiser cameras and his body camera. There were four individuals in the car. Appellant was sitting in the right rear passenger seat. Mingus learned that the driver had an outstanding warrant, as did appellant. Mingus called for backup. He stated that when Officer Alford arrived, he informed the occupants of the vehicle that a drug-detecting canine was going to circle the vehicle. Mingus testified that the canine "indicated on the right rear passenger door." The officers removed the driver, Jeremy Haybron, and appellant from the vehicle. Mingus did a pat-down search of Haybron for weapons, and then placed him in the back seat of his cruiser. Officer Mingus' body camera recorded this conversation after appellant was out of the vehicle:

> Officer Mingus: What's this, a flashlight?
> Appellant: Flashlight. In [the vehicle] is drug paraphernalia in that blue case. It is mine.
> Officer Mingus: Okay. The blue case has drug paraphernalia and it is yours?
> Appellant: It is mine.

　　　　　* * *

Officer Mingus: Go ahead and just put your hands behind your back.
Appellant: All right.

　　　　　* * *

Officer Mingus: Here's what I want you to do.  Turn – turn your wrists like you are praying.  I think it will be more comfortable that way.  Okay.  What just fell out of your pocket there, partner?
Appellant: Out of my pocket? There's nothing in my pocket.
Officer Mingus: No, it just fell because I got it on camera so let's not – it's not the time to lie.  What's in the pink baggie?
Appellant: Ice.[1]
Officer Mingus: Ice?
Appellant: Yeah.  It didn't fall out of my pocket, though, but that's what it looks like.
Officer Mingus: Okay.
Appellant: I – I didn't have – I got holes in my pockets.

After he finished handcuffing appellant, Mingus picked up the pink baggie, and placed appellant in the back seat of his cruiser with Haybron.

{¶8} The video from the rear-facing camera in Officer Mingus' cruiser was then played for the jury, which recorded the appellant and Haybron having the following conversation:

Appellant: Fucking fell out of my jacket.  I couldn't get it stopped.  Fuck. Did they find yours?
Haybron: Don't say anything here.
Appellant: Man, being recorded.

ASSIGNMENT OF ERROR

APPELLANT'S CONVICTION FOR AGGRAVATED POSSESSION OF DRUGS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶9} Appellant alleges that his conviction for aggravated possession of drugs was against the manifest weight of the evidence because the state did not prove that he possessed the methamphetamine found in the pink baggie.

---

[1] " 'Ice' means crystal methamphetamine."  *State v. Anderson*, 4th Dist. Lawrence No. 17CA6, 2018-Ohio-2013, ¶ 11.

Although the officers were operating body cameras as well as a dash camera on a cruiser, there was no video of appellant dropping the pink baggie. Appellant claims that other passengers were less than truthful regarding their ownership of illegal substances found in the car. He states that he was "honest" in admitting that a blue bag of drug paraphernalia inside the vehicle was his; therefore, his statement that the pink baggie was not his should be interpreted truthfully as well. Appellant also cites the fact that he had various holes in the pockets of his pants and thus could not have possessed the baggie.

{¶10} In response, the state argues that the officer's drug-detecting canine indicated that drugs were present outside of the rear passenger door, which is where appellant was seated. Officer Mingus testified that when he was patting down appellant he heard something smack the ground and saw a pink baggie that was not there previously and it contained methamphetamine. Finally, the state asserts that appellant admitted that he dropped the baggie that Mingus had recovered.

Law and Analysis

{¶11} " 'When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses.' " *State v. Griffith*, 4th Dist. Pickaway No. 17CA4, 2017-Ohio-8855, ¶ 26, quoting *State v. Topping,* 4th Dist. Lawrence No. 11CA6, 2012-Ohio-5617, ¶ 60. " 'The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve.' " *Id.*, quoting *State v. Issa,* 93 Ohio St.3d 49, 67,

752 N.E.2d 904 (2001). A " 'court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *Issa* at 67. " 'A reviewing court should find a conviction against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Issa* at 61.

{¶12} Appellant was convicted of aggravated possession of drugs in violation of R.C. 2925.11(A), which states: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Possession is defined as "having control over a thing or substances, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing is found." R.C. 2925.01(K).

{¶13} The evidence shows that a drug-detecting canine indicated the presence of drugs outside the right rear passenger door of the vehicle where appellant was sitting. Further, based on Officer Mingus' testimony, as well the audio from his body and cruiser cameras, it is reasonable to infer that appellant dropped the pink baggie that contained methamphetamine while being searched. Finally, it appears that appellant admitted the baggie was his when he told Haybron, "fell out of my jacket. I couldn't get it stopped. * * * Did they find yours?"

{¶14} Appellant alleges that he could not have possessed the baggie because he had holes in his pockets. However, having holes in his pockets may

be the reason why the baggie dropped to the ground during the pat-down search. Furthermore, the mere fact that appellant was "honest" regarding ownership of drug paraphernalia is not necessarily indicative of whether he would be honest in also admitting he possessed methamphetamine, which is a more serious offense.

{¶15} Having examined the entire record, weighed the evidence, and considered the credibility of witnesses, we conclude that this is not the exceptional case in which the evidence weighs heavily against conviction. Instead, we find a significant amount of evidence supports the jury's conclusion that appellant did possess the pink baggie of methamphetamine before it was dropped onto the ground thereby supporting his conviction for aggravated possession of drugs.  Therefore, because appellant's conviction is not against the manifest weight of the evidence, we overrule his sole assignment of error.

2.  Case No. 20CA4

BACKGROUND

{¶16} On August 26, 2019, the state charged appellant with five criminal counts: (1) attempted rape in violation of R.C. 2923.02, 2907.02(A)(2) and (B), a second-degree felony; (2) attempted sexual battery in violation R.C. 2923.02, 2907.03(A)(1) and (B), a fourth-degree felony; (3) attempted gross sexual imposition in violation of R.C. 2923.02, 2907.05(A)(1) and (C)(1), a fifth-degree felony; (4) kidnapping in violation of R.C. 2905.01(A)(2) and (C)(1), a first-degree felony; and (5) abduction in violation of R.C. 2905.02(B) and (C), a third-degree felony.  The case went to trial and the state presented several witnesses.

{¶17} The state's first witness was a sexual assault nurse who examined the victim C.E.  The nurse testified that C.E. told her she heard a noise in the basement of her apartment complex and when C.E. investigated, she encountered appellant who demanded she perform fellatio.  The nurse further testified that when C.E. refused, appellant slapped her in the face several times.  The nurse explained to the jury that C.E. said she managed to get out of her basement and ring a neighbor's doorbell, but while waiting for an answer, appellant pinned her against the stairs and ejaculated on her head.  The nurse took samples from C.E., including her hair to check for DNA.  The nurse indicated that she did not see any physical injuries but she did notice red welts on C.E.'s face, which she noted as hives.  She further noted that the doctor who examined C.E. issued a report that described her face as having "redness and edema."  The nurse also stated that in her opinion C.E.'s "mental capabilities of what was happening to her [while in the basement] were slowed down."

{¶18} The state's next witness was C.E.  She testified that she heard a noise in the basement of her apartment complex and she discovered her friend at the time, S.B., and appellant.  C.E. stated that after S.B. went to the bathroom, appellant told her to "suck his dick" three times, and if she refused he would "hit" her.  She refused appellant's demand, and S.B. returned from the bathroom and stopped appellant from slapping C.E.  C.E. went on to say that she "got away from [appellant] and was starting to go up the steps, he followed me, pinned my knees together where I couldn't move and then he proceeded to ejaculate on me" and also "touched my breast."  C.E. called 9-1-1 to report the assault, but when

police arrived she did not initially mention that the assault was sexual in nature because she was embarrassed.

{¶19} On cross-examination, C.E. confirmed that after denying appellant's initial demand for fellatio, she walked over to the stairs and sat down.   When asked why she did not just continue up the stairs after appellant's assault, C.E. said she was "freaked out."  She further stated that it wasn't until police informed her appellant could potentially return to the apartment that she told officers his assault was sexual in nature.

{¶20} Next to testify was Officer Stump, who responded to C.E.'s 9-1-1 call.  Stump testified that the report C.E. filled out indicated appellant "hit" her. However, he could not recall what word she used in describing how appellant struck her in the face, but did describe her cheek as being red.  Stump stated that when he arrived it seemed unusual that C.E. was standing near appellant, but he also said that it appeared she did not completely understand what was going on at the time.  When asked how C.E. "presented" to him, Stump testified "she was a little unsure of herself.  Kind of slow.  I don't know if she just wasn't processing what was going on very fast."

{¶21} Next to testify was Officer Burchfield, who also responded to appellant's call.  Burchfield testified that C.E. said appellant punched or hit her. Burchfield admitted that he used the word "punched" in his report; however, he also stated that he was not sure whether he heard C.E. actually use the word "punch."  But he did testify that C.E. said her face hurt and she went to the hospital.

{¶22} The state's next witness was Timothy Augusback, a forensic scientist for the Ohio Bureau of Criminal Investigation. Augusback testified that a "head-hair-comb" sample taken from C.E. tested positive for appellant's DNA.

{¶23} The jury convicted appellant of attempted rape, attempted sexual battery, kidnapping, and abduction, but found appellant not guilty of attempted gross sexual imposition. At sentencing, the trial court merged the attempted sexual battery into attempted rape and abduction, and merged the abduction into kidnapping. The court then sentenced appellant for both kidnapping and attempted rape for an aggregate prison term of 19 to 28 ½ years.

## ASSIGNMENTS OF ERROR

I.    THE TRIAL COURT VIOLATED APPELLANT'S FIFTH AMENDMENT RIGHTS WHEN IT FAILED TO MERGE APPELLANT'S ATTEMPTED RAPE AND KIDNAPPING CONVICTIONS

II.   THERE WAS INSUFFICIENT EVIDENCE PRESENTED AT TRIAL TO CONVICT APPELLANT OF KIDNAPPING

III.  APPELLANT'S CONVICTIONS FOR ATTEMPTED RAPE, KIDNAPPING, AND ABDUCTION WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL

IV.   THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT EXCLUDED EVIDENCE TO IMPEACH THE ALLEGED VICTIM

V.    THE TRIAL COURT ERRED AS A MATTER OF LAW, WHEREAS APPELLANT'S SENTENCE WAS CONTRARY TO LAW

## ASSIGNMENT OF ERROR I

{¶24} Appellant argues that the trial court erred in not merging his attempted rape and kidnapping convictions under R.C. 2941.25. Appellant

claims that when a kidnapping is committed during the commission of another crime they are committed with the same animus if the restraint or movement of the victim is merely incidental to the underlying offense. In this instance, appellant asserts, because the kidnapping was committed during the attempted rape, they are allied offenses of similar import and must merge, which means that he can only be sentenced for one offense or the other, but not both.

{¶25} In response, the state claims that the kidnapping is a separate incident from the attempted rape. Therefore, the state argues that the kidnapping and attempted rape were committed with a separate animus and the kidnapping in the stairs caused an increased chance of harm to C.E. Accordingly, the state maintains that the trial court did not err in failing to merge appellant's attempted rape and kidnapping convictions.

Law and Analysis

{¶26} "R.C. 2941.25 'codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense.' " *State v. Osman*, 4th Dist. Athens No. 13CA22, 2014-Ohio-294, ¶ 17, quoting *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23. R.C. 2941.25 states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed

separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

"By its enactment of R.C. 2941.25(A), the General Assembly has clearly expressed its intention to prohibit multiple punishments for allied offenses of similar import."  *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 8, citing *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999), paragraph three of the syllabus, *overruled on other grounds*, 128 Ohio St.3d 153, 942 N.E.2d 1062.  "By contrast, the General Assembly exercised its power to permit multiple punishments by enacting R.C. 2941.25(B)."  *Id.* at ¶ 9, citing *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 17.

{¶27} "An appellate court should apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination."  *State v. Williams*, 134 Ohio St. 3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.   A de novo standard of review means we " ' "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." ' " *State v. Gillman*, 2015-Ohio-4421, 46 N.E.3d 130, ¶ 13 (4th Dist.), quoting *State v. Williams*,  134 Ohio St. 3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 26, quoting  *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶28} The Ohio Supreme Court has set out a tripartite test to determine when multiple criminal offenses must merge under R.C. 2941.25 in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892.  In making a merger determination under *Ruff*  "within the meaning of R.C. 2941.25, courts must

evaluate three separate factors - the conduct, the animus, and the import." *Id.* at

paragraph one of the syllabus.  The tripartite test is as follows:

> Under R.C. 2941.25(B), a defendant whose conduct supports
> multiple offenses may be convicted of all the offenses [i.e. they
> do not merge] if *any one of the following is true*: (1) the conduct
> constitutes offenses of dissimilar import, (2) the conduct shows
> that the offenses were committed separately, or (3) the conduct
> shows that the offenses were committed with separate animus.
> (Emphasis added.)

*Id.* at paragraph three of the syllabus.

*Ruff* explains that "[t]wo or more offenses of dissimilar import exist within the

meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses

involving separate victims or if the harm that results from each offense is

separate and identifiable."  *Id.* at ¶ 23.

{¶29} In 1979, years before *Ruff* was decided, the Supreme Court

addressed the issue of merger of kidnapping and rape convictions in *State v.*

*Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979).  The Court recognized that

"implicit within every forcible rape R.C. 2907.02(A)(1) is a kidnapping."  *Id.* at

130.  In determining whether the rape and kidnapping convictions should merge,

the court stated:

> The primary issue * * * is whether the restraint or movement of
> the victim is merely incidental to a separate underlying crime or,
> instead, whether it has a significance independent of the other
> offense. In the instant case, the restraint and movement of the
> victim had no significance apart from facilitating the rape. The
> detention was brief, the movement was slight, and the victim was
> released immediately following the commission of the rape. In
> such circumstances, we cannot say that appellant had a
> separate animus to commit kidnapping.

*Id. at 135.*

The Court adopted the following guidelines for determining when a kidnapping

conviction and another similar offense are committed should merge:

> (a) Where the restraint or movement of the victim is merely
> incidental to a separate underlying crime, there exists no
> separate animus sufficient to sustain separate convictions;
> however, where the restraint is prolonged, the confinement is
> secretive, or the movement is substantial so as to demonstrate a
> significance independent of the other offense, there exists a
> separate animus as to each offense sufficient to support
> separate convictions;
>
> (b) Where the asportation or restraint of the victim subjects the
> victim to a substantial increase in risk of harm separate and
> apart from that involved in the underlying crime, there exists a
> separate animus as to each offense sufficient to support
> separate convictions.

*Id.* at syllabus.

{¶30} "Ohio courts still apply the test found in [*Logan*] to determine

whether rape and kidnapping convictions merge for sentencing even though this

test predates *Ruff*." *State v. Thacker*, 4th Dist. Lawrence No. 18CA21, 2020-

Ohio-4620, ¶ 125, *appeal not accepted*, 161 Ohio St. 3d 1408, 2021-Ohio-106,

161 N.E.3d 687. Consequently, this Court adopted the "guidelines" set out in

*Logan* to determine when kidnapping and similar offenses - like rape - are

committed with the same animus and must merge. *Id.*, quoting *Logan* at

syllabus. Therefore, kidnapping and rape convictions merge if the restraint of the

victim is merely incidental to the rape, but do not merge if the restraint subjected

the victim to a harm beyond that of the rape.

{¶31} The evidence indicates that while in the basement of the apartment

complex, appellant threatened he would hit C.E. if she did not perform fellatio,

and when she refused, he struck her several times. C.E., on her own volition,

then immediately proceeded to the stairs that lead out of the basement, and sat down.  However, appellant followed C.E., pinned her in the stairs, then masturbated and ejaculated on her head.  The evidence also shows that while pinning her in the stairs, appellant again demanded she perform fellatio while also threatening to hit her.

{¶32} We find that this evidence indicates that the appellant pinned C.E. by force in the stairs thereby restraining her liberty, and demanded C.E. perform fellatio by threat of force.  We further find that the kidnapping involved only a relatively brief restraint with no asportation, was committed to facilitate appellant's attempt to rape C.E., and did not subject C.E. to additional danger aside from the rape.  Therefore, under *Logan,* the offenses must merge.

{¶33} We reach the same result in applying the tripartite test from *Ruff.* First, the kidnapping and attempted rape convictions involved a single victim and the harm caused by the two offenses was not separate and identifiable, so the offenses are not dissimilar.  Second, both offenses were also committed at the same time, not separately.  Lastly, the kidnapping was committed merely to facilitate the attempted rape, so the conduct did not show that these offenses were committed with a separate animus.  Therefore, under *Ruff,* the offenses must merge.

{¶34} In conclusion, we find that under *both Logan* and *Ruff,* appellant's kidnapping and attempted rape convictions must merge, and the trial court erred in failing to do so.  For this reason, we sustain appellant's first assignment of error.  Accordingly, we reverse the trial court's imposition of separate sentences

on these counts and remand this matter to the trial court to merge the attempted rape and kidnapping convictions for purposes of sentencing.

## ASSIGNMENT OF ERROR II

{¶35} Appellant alleges that there is insufficient evidence that the victim was "restrained" to support his kidnapping conviction.  Appellant argues that there were two incidents of potential restraint.  The first was when he slapped C.E. after she refused to perform fellatio, and the second was when C.E. was on the stairs.  But he alleges that under both scenarios, C.E. was not restrained because she testified that she was free to leave at any time.  As a result, appellant maintains that there is insufficient evidence to support his kidnapping conviction.

{¶36} In response, the state claims that when appellant pinned C.E.'s knees on the stairs that was evidence of restraint to support the kidnapping conviction.  Thus, the state argues that there is sufficient evidence of restraint to support appellant's kidnapping conviction.

## Law and Analysis

{¶37} "A claim of insufficient evidence * * * raises the question of whether the evidence is legally sufficient to support the verdict as a matter of law."  *State v. Benge*, 4th Dist. Adams No. 20CA1112, 2021-Ohio-152, ¶ 25, citing *State v. Blanton*, 2018-Ohio-1278, 110 N.E.3d 1, ¶ 13 (4th Dist.); *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).  The standard of review of a sufficiency of the evidence claim is "after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements

of the offense beyond a reasonable doubt." *Id.*, citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). "A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did." *Id.* at ¶ 26, citing *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 326 (2001).

{¶38} Appellant was convicted of kidnapping under R.C. 2905.01(A)(2), which in pertinent part requires proof that "by force, threat, or deception," the offender did "*restrain the liberty of* [the victim] * * * [t]o facilitate the commission of any felony or flight thereafter." (Emphasis added). The Ohio Revised Code does not define "restraint," but the Tenth District Court of Appeals has stated that "[r]estraining an individual's liberty means limiting or restraining their freedom of movement." *State v. Williams*, 2017-Ohio-5598, 93 N.E.3d 449, ¶ 19 (10th Dist.)

{¶39} The evidence indicates that appellant used force by pinning C.E.'s knees together on the stairs, which restrained her liberty for the purpose of committing attempted rape, which is a felony. In viewing this evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found appellant guilty of kidnapping. Therefore, we overrule appellant's second assignment of error.

ASSIGNMENT OF ERROR III

{¶40} Appellant's third assignment of error alleges that his kidnapping, attempted rape, and abduction convictions are against the manifest weight of the evidence. Specifically, appellant argues that there is insufficient evidence that he

used "force" to support his kidnapping or abduction convictions, or used "force" or

"threat of force" to support his attempted rape conviction.  It appears that

appellant claims that a slap is insufficient to constitute force for purposes of these

offenses.  He maintains that slapping C.E. did not restrain her liberty and she

testified that she was free to leave.  Appellant also asserts that there was

insufficient evidence to prove that he restrained C.E. for purposes of his

kidnapping or abduction convictions.

{¶41} In response, the state argues that while there is conflicting testimony

as to how the force was applied (punch, hit, slap), the testimony was sufficient for

the jury to conclude that appellant used force in committing the attempted rape,

kidnapping, and abduction.  The state also asserts that appellant's act of pinning

C.E. in the stairs restrained her liberty for purposes of abduction and kidnapping.

Therefore, the state argues that these convictions are not against the manifest

weight of the evidence.

Law and Analysis

{¶42} Because we set forth the manifest weight of the evidence standard

of review earlier in this decision, we will not repeat the standard or accompanying

citations here.  Appellant challenges the manifest weight of evidence regarding

his kidnapping, abduction, and attempted rape convictions.  We first note that the

trial court merged abduction with the kidnapping conviction.  Therefore, if

sufficient evidence supports appellant's kidnapping conviction and if the

conviction is not against the manifest weight of the evidence, then an erroneous

abduction finding of guilty by the jury would be harmless.  *See State v.*

*Wickersham*, 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756, ¶ 21, citing State *v.*

*Powell,* 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990).  As such, we will review

appellant's evidentiary challenge to abduction only if we find that appellant's

kidnapping conviction is against the manifest weight of the evidence.

{¶43} The offense of kidnapping required the state to prove the appellant

used "force" "by any means" to "restrain the liberty of the [victim]" for the purpose

of committing a felony.  R.C. 2905.01(A)(2).  The offense of attempted rape

requires the state to prove that the offender attempted to "engage in sexual

conduct with another when the offender purposely compels the other person to

submit by force or threat of force."  R.C. 2903.02 and R.C. 2907.02(A)(2).  R.C.

2901.01(A)(1) defines "force" as "any violence, compulsion, or constraint

physically exerted by any means upon or against a person or thing."

{¶44} C.E. testified that shortly after appellant initially demanded she

perform fellatio and struck her for refusing to comply, he "pinned" her legs in the

stairs, and again demanded she perform fellatio.  We find that the jury could have

reasonably construed this evidence as indicating that appellant used "force" by

physically constraining C.E.'s liberty for purposes of finding appellant guilty of

kidnapping.  We further find the jury could have reasonably found appellant's

threat to slap, and then actually slapping C.E., was "force" because it was

"violence" that he used in an attempt to compel her to perform fellatio, which is

attempted rape.

{¶45} Nevertheless, appellant cites *State v. Pierce*, 3rd Dist. Seneca No.

13-87-27, 1989 WL 86258 (Aug. 3, 1989) apparently for the proposition that a

slap is insufficient to constitute force for purposes of his convictions. [Appellant's brief p. 19] In *Pierce*, the court of appeals affirmed an adult offender's rape conviction of a 13-year old child, reasoning that the appellant's threat to slap the child was sufficient to constitute force. (Emphasis added.) *Id*. at *2. And, the court in *Pierce* further stated that "[a] slap in the face is, in any event, 'violence, compulsion, or constraint physically exerted by any means * * * against a person.' " *Id*. at *2. *Pierce* simply does not support appellant's argument that a slap is insufficient to constitute a use of force for purposes of R.C. 2901.01(A)(1).

{¶46} Because we find that the jury did not lose its way in finding appellant guilty of kidnapping and attempted rape so as to create a manifest injustice requiring a reversal of his convictions, we hold that appellant's convictions are not against the manifest weight of the evidence. Accordingly, we overrule appellant's third assignment of error.

## ASSIGNMENT OF ERROR IV

{¶47} In his fourth assignment of error, appellant argues that the trial court violated his due process rights when it precluded admission of Officer Burchfield's police report. Appellant claims that the trial court abused its discretion in refusing to admit Officer Burchfield's police report to impeach C.E.'s testimony under Evid.R. 613(B). Appellant asserts that Burchfield's police report, which indicated that appellant "punched" C.E., would have impeached C.E.'s testimony that appellant "slapped" her.

{¶48} The state argues that the report does not impeach C.E.'s testimony because the report did not include a direct statement from C.E. The report was a

recitation of what Burchfield recalled C.E. saying.    Burchfield testified about his report and nowhere in his testimony does he claim C.E. used the word "punch." Therefore, the state contends that the trial court did not abuse its discretion in denying appellant from using the report to impeach C.E.

Law and Analysis

{¶49} "A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant." *State v. Ward*, 4th Dist. Gallia No. 3CA2, 2003-Ohio-5650, ¶ 32, citing *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991).  "[T]rial witnesses may be impeached pursuant to Evid.R. 613(B) through the use of their *own* prior inconsistent statements."  (Emphasis added.)  *State v. Byrd*, 4th Dist. Scioto No. 96CA2427, 1998 WL 2403, *2 (Jan. 6, 1998), citing *State v. Hill*, 75 Ohio St.3d 195, 207, 661 N.E.2d 1068 (1996).

{¶50} Officer Burchfield's police report does state that appellant "punched" C.E.  And C.E. testified that she told officers that appellant "hit" her with "his palm," but did not "punch" her.  She further testified that to the extent an officer indicated that appellant "punched" her, he was wrong.  However, Officer Burchfield could not verify that his use of the word "punched" in his report was directly attributable to C.E.  Consequently, it does not appear that the report contains a prior statement from C.E. that conflicted with her trial testimony. Therefore, we find that the trial court's exclusion of the police report from being

used to impeach C.E.'s testimony was not unreasonable, arbitrary, or unconscionable. Accordingly, because we find that the trial court did not abuse its discretion in precluding admission of the police report, we overrule appellant's fourth assignment of error.

ASSIGNMENT OF ERROR V

{¶51} Finally, appellant argues that his aggregate sentence of a 20-year minimum and 28 ½ years maximum in prison, received in case nos. 20CA3, and 20CA4, violates R.C. 2929.144 (The Reagan Tokes Law). The state agrees that appellant's sentencing does not conform with the requirements of R.C. 2929.144. However, appellant admits that if we find that his kidnapping and attempted rape convictions merge, as we have held, this assignment of error becomes moot because the trial court will need to resentence him. Therefore, we decline to address appellant's fifth assignment of error as it has become moot.

CONCLUSION

{¶52} In case no. 20CA2, we overrule appellant's sole assignment of error. In case no. 20CA4, we sustain appellant's first assignment of error, reversing his sentences for kidnapping and attempted rape, and remand the matter for the trial court to merge those convictions and re-sentence appellant accordingly. On remand, the state will have the option of deciding whether the trial court sentences appellant for kidnapping or attempted rape. Additionally, we overrule appellant's second, third, and fourth assignments of error in case no. 20CA4, and we decline to address his fifth assignment of error, which is moot.

**JUDGMENTS AFFIRMED IN PART AND REVERSED IN PART AND CAUSE**

**REMANDED FOR MERGER AND RESENTENCING.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART AND CAUSE REMANDED FOR MERGER AND RESENTENCING and costs be split equally between the parties.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.:  Concur in Judgment and Opinion.

For the Court,


BY:      _____
         Kristy S. WIlkin, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**