[Cite as *State v. Short*, 2025-Ohio-5014.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No.  24CA17 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Melissa D. Short, | : | **RELEASED 10/30/2025** |
| Defendant-Appellant. | : | |

_____
<u>APPEARANCES</u>:

Karyn Justice, Esq., The Law Office of Karyn Justice, LLC, Portsmouth, Ohio, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Andrea M. Kratzenberg, Lawrence County Assistant Prosecuting Attorney, Ironton, Ohio, for appellee.
_____
Hess, J.

{¶1}   Melissa D. Short appeals from a judgment of the Lawrence County Common Pleas Court convicting her, following a jury trial, of kidnapping and burglary. Short presents three assignments of error asserting that her convictions are not supported by the manifest weight of sufficient evidence, that the trial court erred when it did not merge her convictions at sentencing, and that her sentence is contrary to law.  For the reasons which follow, we overrule the assignments of error and affirm the trial court's judgment.

## I.  FACTS AND PROCEDURAL HISTORY

**{¶2}** Short was indicted on one count of kidnapping in violation of R.C. 2905.01(A)(2), a first-degree felony, and one count of burglary in violation of R.C. 2911.12(A)(2), a second-degree felony.  The matter proceeded to a jury trial at which the victim testified that on September 7, 2023, around 5:00 p.m., he picked up Short at the Kroger in Proctorville, took her to his home in Willow Wood, and gave her $50 for sex. Short spent about an hour at his home, and he dropped her off in Huntington around 7:30 p.m.  Around midnight, the victim awoke to knocking on his door.  When he answered it, a man in a ski mask pulled a gun on him and entered the home with three other masked men. They made him lie down on the floor. His billfold, debit card, watch, car keys, two cell phones (only one of which had service), and $500 in his pocket and billfold were taken. The men wanted his debit card PIN so they could go to the bank, and the victim gave it to them. Two men went to the bank while two men stayed with him. One of the men who stayed held him at gunpoint while the other man took almost a dozen of the victim's firearms out of the home.

**{¶3}** Later, the other two men returned with Short. When asked if Short had a mask on, the victim testified, "She had her-- tried to cover up, but she-- I seen her, and she looked right straight at me when I'm laying there in the floor [sic]."  When asked, "What happened when the two males and Ms. Short came back to your residence?" the victim testified, "They tied me up and then left after."  The victim testified that his legs were tied to a kitchen chair in the living room, but his hands were not tied.  The victim freed himself.  The intruders took his vehicle, so he rode his four-wheeler to his daughter's

home, had her call 911, and had her track his cell phone. The victim recovered his guns and vehicle, and his bank reimbursed him for the roughly $1660 taken with his debit card.

{¶4} Deputy Wes Barker of the Lawrence County Sheriff's Office was dispatched to the daughter's home. The victim told Deputy Barker that he brought a prostitute named Melissa to his home earlier, and later that evening, "he received a knock on his door who, they [sic] had mentioned that they were the police," and when he opened the door, "they forced their way in." They "all had masks on and held him at gun point." There were two black males, a white male, and a female. The victim went back and forth about whether there was a fourth male; "he wasn't for certain." The victim told Deputy Barker that he heard one of the men call the female Melissa. The victim did not tell Deputy Barker that he recognized the female. Deputy Barker testified that the victim "suspected" the female was the prostitute he had hired, but Deputy Barker did not believe the victim told him it was her. Deputy Barker testified that the victim said that at one point, two males left while other people stayed with him, but the victim was "not very specific on when [the female] came and left and such of that thing [sic]." The victim said that his vehicle, cell phone, wallet, $500, debit cards, multiple firearms, and multiple jewelry items were taken. The victim also said that "they tied him loosely to a chair" and that he was "tied up for about an hour or over an hour." Deputy Barker did not notice any marks on the victim but observed that "[h]e seemed to be very shaken up." Deputy Barker tracked the victim's phone, which was moving in Huntington, using the Find My iPhone feature on the daughter's phone. He had dispatch contact the Huntington Police Department ("HPD") to see if it could stop the vehicle the phone was in, and the HPD did.

{¶5}   Sergeant Steven Sisler of the Lawrence County Sheriff's Office gave testimony indicating he was dispatched to the victim's home, though he could not recall the address and did not know who resided there.  He saw a kitchen chair in the middle of the living room with a green paracord around it.

{¶6}   Detective Sergeant Brad Layman of the Lawrence County Sheriff's Office testified that the morning of September 8, 2023, he got a call from Sergeant Sisler about a home invasion.  Dispatch informed Detective Layman that Short had been stopped in Huntington driving the victim's vehicle.  He went to the scene and saw the victim's vehicle and Short in the back of a cruiser.  Detective Layman photographed the victim's vehicle and items inside it, which included 10-12 firearms and 2 debit cards which belonged to the victim. Detective Layman testified that he had "never seen that many guns transported like that."  He went to the HPD to interview Short, and she told him that the victim "let her borrow the vehicle, and that he had dropped everything off to her that way."  A few days later, Detective Layman spoke to the victim, who said that he and Short "made an arrangement for sex and that people would've came back with ski masks and entered his home, and Ms. Short was one of them there and she-- he had heard one of the males call her by Melissa and they stole everything from him."  Detective Layman was not sure if the victim provided bank statements but testified that there were text messages from the bank with fraud alerts.

{¶7}   The jury found Short guilty on both counts. During sentencing, the court read aloud a victim impact statement in which the victim asked the court to impose the maximum penalty allowed by law and said that Short's actions had "traumatized" him, that he fears for his life "on a daily basis," and that he "can no longer sleep at night."  The

State asked for maximum consecutive sentences. The defense asserted that the offenses should merge and asked for a 6 to 9 year sentence.  The court did not merge the offenses, emphasizing that the purpose of the burglary was to commit theft and that the restraint continued after the burglary and theft were complete, and the intruders had left.  The court sentenced Short to 11 to 16.5 years in prison on the kidnapping count and 8 to 12 years in prison on the burglary count.  The court ordered that the sentences run consecutive to one another.

## II.  ASSIGNMENTS OF ERROR

**{¶8}**    Short presents three assignments of error:

I.  Ms. Short's convictions are not supported by the manifest weight of sufficient evidence.

II.   The court erred when it did not merge Ms. Short's convictions at sentencing.

III.  Ms. Short's sentence is contrary to law.

## III.  SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE

**{¶9}**    In the first assignment of error, Short contends her convictions are not supported by the manifest weight of sufficient evidence.  Short does not dispute that there is evidence that a burglary and kidnapping occurred.  However, she maintains that the evidence does not show that she committed those offenses or aided or abetted the unknown intruders. Short asserts that the State's case relied primarily on the victim's inconsistent statements and that neither version of events he gave supports her convictions.  Short asserts that her presence at the scene is insufficient to prove that she was an aider or abettor and that while there was evidence that she was stopped by police in Huntington while driving the victim's vehicle with his property inside, none of the

witnesses saw her take the vehicle from his home, and the record does not show that she "acted in any way or shared the criminal intent of the principal offenders."

### A. Standards of Review

**{¶10}** In reviewing the sufficiency of the evidence to support a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997), and following *Jackson v. Virginia*, 443 U.S. 307 (1979). "A sufficiency  assignment of error challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness." *State v. Anderson*, 2019-Ohio-395, ¶ 13 (4th Dist.). "That limited review does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Musacchio v. United States*, 577 U.S. 237, 243 (2016), quoting *Jackson* at 319. We will not overturn a conviction based on insufficient evidence "'unless reasonable minds could not reach the conclusion that the trier of fact did.'" *State v. Cook*, 2019-Ohio-4745, ¶ 15 (4th Dist.), quoting *State v. Bradshaw*, 2018-Ohio-1105, ¶ 15 (4th Dist.)

**{¶11}** In determining whether a conviction is against the manifest weight of the evidence, an appellate court

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary.  In order to satisfy this test, the state must introduce

substantial evidence on all the elements of an offense, so that the jury can find guilt beyond a reasonable doubt.

Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. However, we are reminded that generally, it is the role of the jury to determine the weight and credibility of evidence. " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.' " *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17, quoting *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility.

(Citations omitted.) *Anderson* at ¶ 14-15.

### B. Relevant Statutes

**{¶12}** Short was charged with burglary in violation of R.C. 2911.12(A)(2) and kidnapping in violation of R.C. 2905.01(A)(2). R.C. 2911.12(A)(2) states:

(A) No person, by force, stealth, or deception, shall do any of the following:
. . .

(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]

**{¶13}** R.C. 2905.01(A)(2) states:

(A) No person, by force, threat, or deception, . . . shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

. . .

(2) To facilitate the commission of any felony or flight thereafter[.]"

**{¶14}** "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain

nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."  R.C. 2901.22(A).

**{¶15}**  Although Short was charged in terms of the principal offenses, at trial, the State asserted that Short was also guilty as an aider and abettor, and the trial court gave the jury complicity instructions.  *See generally* R.C. 2923.03(F) ("A charge of complicity may be stated in terms of this section, or in terms of the principal offense").  R.C. 2923.03 is Ohio's complicity statute.  R.C. 2923.03(A)(2) states:  "No person, acting with the kind of culpability required for the commission of an offense, shall . . . [a]id or abet another in committing the offense[.]"  "Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender."  R.C. 2923.03(F).

**{¶16}**  The trial court instructed the jury that to find Short guilty of complicitly by aiding and abetting

> you must find beyond a reasonable doubt that the defendant supported, assisted, encouraged, cooperated with, advised, solicited, procured or incited the principal offender in the commission of the offense and that the defendant shared the criminal intent of the principal offender.  Such intent may be inferred from the circumstances surrounding the offense, including, but not limited to, presence, companionship and conduct before and after the offense was committed.  The mere presence of the defendant at the scene of the offense is not sufficient to prove in and of itself that the defendant was an aider or abettor.

## C.  Analysis

**{¶17}**  The jury could conclude that Short supported, assisted, encouraged, cooperated with, advised, solicited, procured or incited the principal offenders in the commission of the burglary and kidnapping and that she shared their criminal intent. Short was not merely present at the crime scene.  A few hours before the home invasion,

Short spent about an hour in the victim's home and rode in his vehicle twice, which gave her access to information about his home and possessions. Later, masked men entered the home and took the victim's property at gunpoint. There is evidence that Short reentered the home with two of the masked men after the victim's debit card was used to take money from his bank account. When asked, "What happened when the two males and Ms. Short came back to your residence?" the victim testified, "They tied me up and then left after," indicating Short participated in tying him up. Even if the jury did not believe the victim's testimony that he recognized Short during the home invasion, the jury could still infer that Short was the female intruder the victim reported to law enforcement from other facts, including that the victim told law enforcement that he heard a male intruder call the female intruder "Melissa" and tracking of the victim's cell phone resulted in Short being stopped by police while driving the victim's vehicle containing his debit cards and firearms. In addition, there is evidence that instead of reporting what happened to law enforcement, Short lied about the victim lending her his vehicle with his possessions already inside it.

{¶18} Any rational trier of fact could have found the essential elements of the offenses proven beyond a reasonable doubt, and in resolving conflicts in the evidence, the jury did not clearly lose its way and create such a manifest miscarriage of justice that reversal of the convictions is necessary. Sufficient evidence supports the convictions, and the convictions were not against the manifest weight of the evidence. Accordingly, we overrule the first assignment of error.

### IV.  MERGER

**{¶19}**  In the second assignment of error, Short contends the trial court erred when it did not merge her convictions at sentencing.  Short maintains that the restraint of the victim was merely incidental to the burglary.  She asserts that the victim was not moved from his home, was not harmed while restrained, and "testified he was able to free himself and go to his daughter's house shortly after [the intruders] left."  Thus, "[t]he record does not show there was separate animus or intent to kidnap or retrain [sic] [the victim] except as part of the commission of the burglary."

**{¶20}**  "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense."  *State v. Underwood*, 2010-Ohio-1, ¶ 23.  The statute states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

"We review de novo whether certain offenses should be merged as allied offenses under R.C. 2941.25."  *State v. Sines-Riley*, 2024-Ohio-2860, ¶ 57 (4th Dist.), citing *State v. Bailey*, 2022-Ohio-4407, ¶ 6, 13.

**{¶21}**  "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import."  *State v. Ruff*, 2015-Ohio-995, paragraph one of the syllabus.

"Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at paragraph three of the syllabus. "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

{¶22} In *State v. Logan*, 60 Ohio St.2d 126 (1979), the Supreme Court stated:

In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:

(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Logan* at syllabus. "The primary issue . . . is whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense." *Id.* at 135. Although *Logan* predates *Ruff*, we continue to use *Logan's* guidelines in determining whether kidnapping and similar offenses were committed with the same animus. *See State v. Jones*, 2021-Ohio-2601, ¶ 30 (4th Dist.).

**{¶23}** In the case, the offenses were committed with separate animus. The conduct shows the animus for the burglary was theft. The restraint of the victim was not merely incidental to the burglary and had significance independent of it. Although there was no substantial movement of the victim, the confinement was secretive as it happened in the victim's house in the middle of the night. *See State v. Ramirez*, 2011-Ohio-6531, ¶ 60 (12th Dist.) (finding confinement secretive because crimes occurred in victim's house in middle of night). The restraint was also prolonged. Contrary to what Short asserts, the victim did not testify that he freed himself "shortly" after the intruders left. And Deputy Barker testified that the victim told him that he was "tied up for about an hour or over an hour." Even if the victim freed himself shortly after the intruders left, the duration of the restraint exceeded that necessary to complete the theft. The victim was tied to the chair after his car keys and other possessions were taken at gunpoint and right before the intruders left. Thus, the conduct shows that the animus for kidnapping the victim by tying him to the chair was to facilitate escape. *See generally State v. Brown*, 12 Ohio St.3d 147, 151 (1984) (fact that defendant bound and gagged victim upon completion of sexual attacks indicated that particular restraint was performed to facilitate his escape, not to facilitate a sexual attack); *State v. Killingsworth*, 2020-Ohio-724, ¶ 18 (3d Dist.) (kidnapping and robbery committed with separate animus because instead of fleeing immediately after robbery, defendant continued to hold victim at gunpoint for at least a few more minutes, so duration of restraint "clearly exceeded that necessary to complete the robbery," and "the restraint was not merely incidental to the robbery"). Thus, Short could be convicted of both offenses. Accordingly, we overrule the second assignment of error.

## V.  SENTENCING

**{¶24}**  In the third assignment of error, Short contends her sentence is contrary to law.  Short maintains the trial court erred when it imposed maximum sentences for each offense. Short asserts that R.C. 2929.11(A) requires that a court use the minimum sanctions necessary to protect the public from future crime, punish the offender, and promote the effective rehabilitation of the offender and that R.C. 2929.11(B) requires that a sentence be commensurate with the seriousness of the offense. She claims "[t]he record does not support the court's finding that [her] sentence is commensurate with the offense or is the minimum sanction necessary to achieve the purposes of felony sentencing." Short also asserts that consecutive sentences are improper because the record does not support the court's finding that multiple offenses were committed that caused harm that was great or unusual.  Short maintains that the victim was not physically harmed, his items were recovered, he did not provide bank statements to show what money was taken with his debit card, and "[h]e was not restrained for a prolonged period of time apart from what was intrinsic to effectuate the burglary."

### A.  R.C. 2953.08

**{¶25}**  R.C. 2953.08(A) authorizes a defendant who is convicted of a felony to appeal as a matter of right the sentence imposed on the defendant on various grounds, including that the sentence is "contrary to law."  R.C. 2953.08(G)(2) states:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its

discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶26} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

## B.  Maximum Sentences

{¶27} Short's suggestion that her sentence is contrary to law because the imposition of maximum sentences is not supported under R.C. 2929.11 is not well taken. "R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if it clearly and convincingly finds that 'the record does not support the sentencing court's findings under' certain specified statutory provisions." *State v. Jones*, 2020-Ohio-6729, ¶ 28.  "But R.C. 2929.11 . . . [is] not among the statutory provisions listed in R.C. 2953.08(G)(2)(a)." *Id.*  Moreover, "an appellate court's conclusion that the record does not support a sentence under R.C. 2929.11 . . . is not the equivalent of a conclusion that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 34.  Thus "R.C. 2953.08(G)(2) does not allow an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 . . . ." *State v. Bryant*, 2022-Ohio-1878, ¶ 22, citing *Jones* at ¶ 31,

39. Thus, we overrule the third assignment of error to the extent it challenges the imposition of maximum sentences.

## C. Consecutive Sentences

**{¶28}** R.C. 2929.14(C)(4) states:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶29}** Short challenges whether the record supports the court's R.C. 2929.14(C)(4)(b) finding, but after reviewing the entire record, we do not clearly and convincingly find that the record does not support this finding. The record shows that the kidnapping and burglary were committed as part of a course of conduct. The victim's statements that he was traumatized, fears for his life on a daily basis, and can no longer sleep at night support a finding that the harm caused by Short's offenses was so great that no single prison term for any of the offenses adequately reflects the seriousness of

her conduct. Accordingly, we overrule the remainder of the third assignment of error to the extent it challenges the imposition of consecutive sentences.

## VI. CONCLUSION

**{¶30}** Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Michael D. Hess, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**