[Cite as *State v. Dewees*, 2018-Ohio-1677.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2017-T-0038 |
| DONALD WILLIAM DEWEES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2015 CR 00610.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, *Gabriel M. Wildman* and *Ashleigh Musick,* Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Donald W. DeWees, appeals his convictions and sentences following a jury trial in the Trumbull County Court of Common Pleas for Attempted Rape and Kidnapping. The issues before this court are whether charges for Kidnapping and Attempted Rape merge where the victim has been moved to a secretive confinement before the attempt is made to avoid detection and whether the victim's alcoholism renders her testimony unbelievable where it is inherently more probable than

the defendant's version. For the following reasons, we affirm the decision of the court below.

{¶2} On September 12, 2016, the Trumbull County Grand Jury indicted DeWees for Attempted Rape (Count 1), a felony of the second degree in violation of R.C. 2923.02(A) and 2907.02(A)(2) and (B), and Kidnapping (Count 2), a felony of the first degree in violation of R.C. 2905.01(A)(4) and (C)(1).

{¶3} On September 15, 2016, DeWees was arraigned and entered pleas of not guilty.

{¶4} On February 27 and 28, 2017, the case was tried before a jury at which the following testimony was given:

{¶5} A.G.L. testified that she dated DeWees for about three and a half years until November 2015, and that they remained friends thereafter.

{¶6} On August 5, 2016, A.G.L. made plans to spend the day fishing with a new boyfriend, Daniel Pigg, at a canoe livery located within walking distance of her home on East Jay Street in Newton Falls. A.G.L. arrived at the livery at about 4:00 p.m. Aware of her plans for the day, DeWees arrived next at the livery with a cooler of beer which they began drinking. Pigg arrived within a half-hour and the three engaged in casual conversation.

{¶7} DeWees began asking questions about A.G.L. and Pigg's relationship and then insulting A.G.L. A.G.L. described the situation as awkward and she wanted to leave.

{¶8} At about 6:00 p.m., A.G.L. left the livery having made arrangements via text-messaging to meet Pigg later to go camping. She went home to pack some

2

camping gear in a book bag and walked back to a paved trail (the Newton Falls Trail) leading to the campsite.

{¶9} As she emerged from a tunnel passing underneath railroad track, DeWees confronted her, calling her a "cheat" and a "liar" among other things, and they began to argue. DeWees grabbed A.G.L. by the hair and neck and dragged her up an incline about five or six feet from the trail. DeWees pushed A.G.L. to the ground on her back and said that he wanted to have his way with her before Pigg did. DeWees sat on her and started to tear her clothes off. A.G.L. resisted and DeWees punched her several times in the face. DeWees took off her clothes (a tank top, boxers, and "boy shorts") only leaving her bra on. DeWees then stood up and A.G.L. kicked him hard in the groin. DeWees went to the ground coughing.

{¶10} A.G.L. was able to run back to the paved trail where she grabbed a towel from her bookbag to cover herself. A.G.L. continued running back to her home on Jay Street with DeWees following her on a bicycle. At the house, she met Norman Reese, who also resides at that address, and called 911. A recording of the 911 call was played for the jury on which A.G.L. told the dispatcher that DeWees "hit me several times in the head and tried to rape me." A.G.L. had a laceration on the side of her head, a bruised lip, and a swollen face. There were other visible marks and injuries on her neck and back.

{¶11} On cross-examination, A.G.L. admitted she was an alcoholic and had drunk about eight beers during the course of the day on August 5. The defense also impeached A.G.L. with letters she had written indicating that, contrary to her testimony on direct, she was still involved with DeWees in December of 2015.

**{¶12}** Daniel Pigg testified that he arrived at the canoe livery on August 5, 2016, around 5:00 p.m. after leaving work for the day. He drank about three beers before DeWees became upset and began verbally abusing A.G.L. A.G.L. said she did not have to take this and left. Pigg also left on the pretext that he was going to buy more beer. Instead, he went home to get camping gear and meet A.G.L. later that evening.

**{¶13}** Pigg reached the campsite at approximately 9:00 p.m. After waiting about forty-five minutes for A.G.L. to arrive, he called her but she did not answer. He called her a second time and she answered while running back to her home. She was crying and emotional and told him that DeWees had just beat her up and tried to rape her. Pigg could hear DeWees in the background yelling that he did not do anything.

**{¶14}** Norman J. Reese testified that, in August 2016, he was living on East Jay Street with A.G.L., who was helping him take care of himself following a stroke. At about 10:00 p.m. that evening, A.G.L. came banging on the door (it was locked), crying and dirty. A.G.L. was screaming at someone on a bicycle and he was hollering back. When asked, A.G.L. said that DeWees had beat her up and tried to rape her.

**{¶15}** Adam C. Gilger of the Newton Falls Police Department was dispatched to A.G.L.'s home on August 5, 2016. Gilger took a verbal statement from A.G.L. but deferred taking a written statement until the next day since she appeared intoxicated. That evening, Gilger searched the trail by the tunnel for A.G.L.'s clothes but did not find anything.

**{¶16}** Sergeant Steven Storm of the Newton Falls Police Department executed the warrant for DeWees' arrest on August 9, 2016. After being taken into custody, DeWees stated that he, A.G.L., and Pigg had been drinking at the canoe livery. A.G.L.

4

and Pigg left and did not return. DeWees said he eventually left also on his bicycle and came upon A.G.L. and Pigg having sex by the railroad tunnel. DeWees began calling A.G.L. names and Pigg ran away. DeWees offered no explanation for A.G.L.'s injuries.

{¶17} DeWees also told Sergeant Storm that he returned to the trail the next day to retrieve his sunglasses and found A.G.L.'s "torn up clothes." DeWees said he put the clothes in his beer cooler and left the cooler at the canoe livery. Storm went to the livery and found the cooler as described by DeWees. Inside were underwear, a tank top, and a tie string – "all balled up and twisted."

{¶18} Christine Hammett, a forensic scientist for the Bureau of Criminal Investigation (BCI), tested the clothing retrieved from DeWees' cooler for blood and semen. The underwear and tank top tested presumptive positive for blood and no semen was identified. The string did not have stains for analysis.

{¶19} Michelle Matozel, a forensic scientist for BCI, performed DNA testing on samples taken from A.G.L.'s underwear and tank top. Matozel confirmed the existence of A.G.L.'s blood on the underwear and tank top. The samples also revealed a mixture of DNA.

{¶20} Hallie Dreyer, a forensic scientist for BCI, performed Y-STR testing (male specific) on samples taken from A.G.L.'s underwear and tank top. She testified that neither DeWees nor his paternal male relatives could be excluded as minor contributors to the DNA samples and that the estimated frequency of DeWees' profile among unrelated males was 1 in 621 (the highest possible probability obtainable at the time of

testing given the number of available profiles).[1]  Dreyer also opined that the profile was not indicative of more than one male contributor.

**{¶21}** On cross-examination, Dreyer testified that she could not identify the source of the DNA (e.g. blood, semen, touch) and that she only had a profile from DeWees for comparison.

**{¶22}** DeWees testified that, on August 5, 2016, he made plans to meet A.G.L., who was then his girlfriend, at the canoe livery.  They had spent about two hours drinking beer when Pigg arrived.  DeWees left to purchase more beer and the three of them continued drinking.  At about 7:30 or 8:00 p.m., A.G.L. left to go home because she was tired and wanted to rest.  About fifteen minutes later, Pigg left to obtain more beer.

**{¶23}** When Pigg did not return after about 40 minutes, DeWees decided to visit a friend and began riding his bicycle north along the trail.  After passing the railroad tunnel, DeWees heard A.G.L. so he stopped and got off the bicycle.  He called her name and saw someone run away into the woods who looked like Pigg, but he could not be sure because it was becoming dark.

**{¶24}** DeWees found A.G.L. up an embankment about 25 feet from the trail, lying on a towel, naked except for a bra.  He became upset and called her a slut and a whore and asked if there was anyone else in town she was screwing.  A.G.L. yelled back and kicked him in the groin.  When he doubled over, she began to punch him on the back of the head.  He slapped her.  She came at him again and he shoved her.

---

1. Dreyer tested four samples: one sample from the tank top and three from the underwear.  The tank top and one of the underwear samples yielded DNA consistent with DeWees.  The two other underwear samples did not yield sufficient data for comparison.

A.G.L. fell face first back down the embankment. She then grabbed her towel and left. DeWees followed A.G.L. on his bicycle to "make sure she made it home."

{¶25} The next day, DeWees returned to the place where he and A.G.L. had had their altercation to look for his sunglasses. He also found A.G.L.'s shirt, underwear, and hair tie. He put them in his cooler and left the cooler at the canoe livery.

{¶26} On cross-examination, DeWees was unable to explain how the blood might have gotten on A.G.L.'s clothes, except that maybe she was menstruating that day and forgot her "wad."

{¶27} On March 1, 2017, the jury returned guilty verdicts as to each count of the Indictment.

{¶28} On March 15, 2017, a sentencing hearing was held. Over the objection of defense counsel, the trial court did not merge the convictions. The court ordered DeWees to serve a sentence of ten years for Kidnapping concurrently with eight years for Attempted Rape for an aggregate sentence of ten years. The court further advised DeWees that he would be subject to mandatory periods of post release control of five and three years respectively and classified as a Tier III Sex Offender.

{¶29} On March 21, 2017, DeWees' sentence was memorialized in a written Entry on Sentence.

{¶30} On April 18, 2017, DeWees filed a Notice of Appeal. On appeal, DeWees raises the following assignments of error:

{¶31} "[1.] The trial court erred, as a matter of law, by sentencing appellant on both the attempted rape and kidnapping charges as the charges are allied offenses of similar import."

7

**{¶32}** "[2.] The appellant's convictions are against the manifest weight of the evidence."

**{¶33}** The first assignment of error raises the issue of whether DeWees may stand convicted of both Attempted Rape and Kidnapping.

**{¶34}** Ohio's multiple counts or allied offenses of similar import statute provides:

> (A)  Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25; *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph three of the syllabus ("a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus").

**{¶35}** "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import." *Ruff* at paragraph one of the syllabus. "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that

8

results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

**{¶36}** "An appellate court should apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination." *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

**{¶37}** Specific to the charges of Kidnapping and Rape, the Ohio Supreme Court has recognized that "implicit within every forcible rape * * * is a kidnapping." *State v. Logan*, 60 Ohio St.2d 126, 130, 397 N.E.2d 1345 (1979). In applying R.C. 2941.25(B) to the charge of Kidnapping, then, the Court has adopted the following guidelines:

> (a)   Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
>
> (b)   Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Id.* at syllabus.

**{¶38}** DeWees argues that the Kidnapping and Attempted Rape convictions should have merged: "there is simply nothing in the record indicating that Appellant forcibly moved the alleged victim up the small embankment for any other purpose than the alleged attempted sexual assault." Appellant's brief at 9. We disagree.

**{¶39}** The evidence at trial fairly demonstrates that the purpose of DeWees' confinement and asportation of A.G.L. was to remove her to a secretive confinement

9

and thus avoid the possibility of detection while committing the sexual assault. DeWees accosted A.G.L. on the Newton Falls Trail, a paved all-purpose trail along the Mahoning River. Rather than raping her there, he dragged her up an embankment to where train tracks pass over the trail. A.G.L. testified that the location was "not visible from the sidewalk." Consistent with DeWees' purpose, Officer Gilger was unable to find evidence of the rape when he searched the area that evening. DeWees, however, was able to recover A.G.L.'s clothes the following day.

{¶40} Thus, the charges of Kidnapping and Attempted Rape were distinguished by separate conduct and animus (or motivation as it is characterized in *Ruff*). The Kidnapping consisted of DeWees removing A.G.L. by force, dragging her by the hair and neck, from a public walkway where she was found to a place not visible from that walkway for the purpose of raping her without detection. R.C. 2905.01(A)(4).[2] Nothing impeded him from committing the rape where he found her. Once removed from the trail, DeWees pushed her to the ground and sat on her while removing her clothes. The restraint of her liberty at that point was clearly to facilitate the rape itself. R.C. 2907.02(A)(2).[3]

{¶41} "Secret confinement, such as in an abandoned building or nontrafficked area, without the showing of any substantial asportation, may, in a given instance, also signify a separate animus and support a conviction for kidnapping apart from the commission of an underlying offense." *Logan*, 60 Ohio St.2d at 135, 397 N.E.2d 1345. There are many cases to support the proposition Kidnapping and Rape should not

---

2. "No person, by force, * * * shall remove another from the place where the other person is found * * * [t]o engage in sexual activity."
3. "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force * * *."

10

merge where the Kidnapping serves the distinct purpose of concealing the Rape. *State v. Helms*, 7th Dist. Mahoning No. 15 MA 0183, 2017-Ohio-4383, ¶ 17 ("Helms drove the victim to a different location to rape her; he did not rape her in the location where he began making sexual advances * * * demonstrat[ing] that the rape and kidnapping were committed with a separate animus"); *State v. Terry*, 10th Dist. Franklin No. 15AP-176, 2015-Ohio-3847, ¶ 16 (where the victim was dragged around the corner from her residence and forced into a dark, open garage, "the movement of the victim prior to the rape, although not long in duration, * * * was not merely incidental to the rape"); *State v. Zanders*, 8th Dist. Cuyahoga No. 99146, 2013-Ohio-3619, ¶ 29 (the restraint and force used in "dragg[ing] the victim by the back of her hair from a pay phone across the street and then through an open field to a secluded 'cubbyhole' in the rear yard behind a building * * * was separate and distinct from the force exercised during acts of the rape"); *State v. Merryman*, 4th Dist. Athens No. 12CA28, 2013-Ohio-4810, ¶ 52 ("[h]e could have performed oral sex upon the victim in the hallway but Merryman had a separate animus for the kidnapping, i.e. he wanted his actions to be secret; this separate animus supports a separate conviction for kidnapping").

{¶42} Admittedly, there are similar cases which support the contrary conclusion that the Kidnapping and Attempted Rape charges should have merged. *See, e.g., State v. Johnson*, 2014-Ohio-4750, 22 N.E.2d 249, ¶ 108 (3d Dist.) (Johnson's act of moving the victim from an alley "to an area under a porch on the exterior of an apparently abandoned apartment building[,] * * * threaten[ing] to kill [her] * * *, and order[ing] her to perform fellatio * * * demonstrates that Johnson's restraint and movement of M.F. had no significance apart from facilitating the rape") (cases cited); *State v. Lundy*, 8th Dist.

11

Cuyahoga No. 105117, 2017-Ohio-9155, ¶ 33-34 (although "Lundy obviously removed G.H. from the bus stop in order to avoid detection," the act "was brief and the movement was slight" so that "the kidnapping was incidental to the rape itself" and "there was no separate animus for the kidnapping").

{¶43} Given the fact-specific nature of the inquiry, we need not expressly adopt one line of cases and reject the other. More than once the Ohio Supreme Court has "recognize[d] that this analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases." *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 32, quoting *State v Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52. "But different results are permissible, given that the statute instructs courts to examine a defendant's conduct—an inherently subjective determination." (Citation omitted.) *Id.*

{¶44} Given the facts of this case, it is clear that the Kidnapping and Attempted Rape resulted from distinct conduct and motivation. The act of dragging A.G.L. by the hair and neck neither directly facilitated nor was immediately motivated by the desire to commit the rape (which could be considered a secondary effect of the conduct). This conduct was not, in the words of the *Logan* court, a priori necessary to commit the rape. Rather, again in the words of the *Logan* court, its purpose was the secretive confinement of A.G.L. so that the rape could be committed without detection. Pushing A.G.L. to the ground, sitting on her, and tearing her clothes off was the conduct properly constituting the Attempted Rape. Finally, we emphasize that, under *Ruff*, either distinct conduct or a distinct animus/motivation is sufficient for the charges not to merge. *Ruff* at paragraph three of the syllabus ("a defendant * * * may be convicted of all the

12

offenses if any one of the following is true * * * the conduct shows that the offenses were committed separately, or * * * the conduct shows that the offenses were committed with separate animus").

{¶45} The first assignment of error is without merit.

{¶46} Under the second assignment of error, DeWees argues that his convictions are against the manifest weight of the evidence.

{¶47} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A challenge to the weight of the evidence compels a reviewing court to consider "the evidence's effect of inducing belief" and ask "whose evidence is more persuasive—the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387.

{¶48} DeWees does not contend that there was insufficient evidence to support his convictions, but that his version of the events of August 5, 2016, is more credible than A.G.L.'s version. We disagree. DeWees emphasizes A.G.L.'s alcoholism and the discrepancies in her version of events. We find neither her alcoholism nor the discrepancies particularly material.

13

{¶49} A.G.L.'s ability to recall events properly was not an issue in the present case. The condition of her face and absence of clothing are not in dispute. Nor is DeWees' identity an issue inasmuch as he admits being with A.G.L. at the scene of the crime and striking her. A.G.L. within minutes of the attack and consistently thereafter described DeWees' conduct as Attempted Rape. Moreover, the jury heard A.G.L.'s 911 call and could form its own opinion of her coherence therefrom.

{¶50} The discrepancies in A.G.L.'s testimony are not significant and only cast slight doubt on her overall credibility. DeWees maintains that his testimony and A.G.L.'s testimony were the only "particularly meaningful testimony" on the issue of guilt. When the two versions of the events are compared (even excepting the substantial evidence corroborating her version), A.G.L.'s is easily the more believable. A.G.L.'s injuries are more consistent with an assault than with a "face plant" from being pushed down the embankment. DeWees maintains that A.G.L. was already naked when he struck her but offers no plausible explanation for the blood on her clothing, or why he would hide her clothes in his cooler afterwards.

{¶51} DeWees' convictions do not constitute a miscarriage of justice. The second assignment of error is without merit.

{¶52} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, finding DeWees guilty of Kidnapping and Attempted Rape, is affirmed. Costs to be taxed against the appellant.

TIMOTHY P. CANNON, J.,

COLLEEN MARY O'TOOLE, J.,

concur.