[Cite as *State v. Kuntz*, 2022-Ohio-3376.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,               : CASE NO. 20CA3731

    v.                                :

CLARENCE J. KUNTZ,                      : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.              :

_____

APPEARANCES:

Erika M. LaHote, Assistant State Public Defender, Columbus, Ohio, for appellant.[1]

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Pamela C. Wells, Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.
_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:9-22-22
ABELE, J.

{¶1} This is an appeal from a Ross County Common Pleas Court judgment of conviction and sentence. Clarence J. Kuntz, defendant below and appellant herein, assigns three errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ERRED IN SENTENCING KUNTZ WHEN IT FAILED TO DETERMINE THAT COUNT ONE (KIDNAPPING) AND COUNT THREE (RAPE) WERE NOT ALLIED OFFENSES OF SIMILAR IMPORT."

_____

[1] Different counsel represented appellant during the trial court proceedings.

SECOND ASSIGNMENT OF ERROR:

"KUNTZ WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHEN HIS ATTORNEY FAILED TO ARGUE THAT HIS CONVICTIONS FOR KIDNAPPING AND RAPE WERE ALLIED OFFENSES OF SIMILAR IMPORT."

THIRD ASSIGNMENT OF ERROR:

"KUNTZ'S CONVICTIONS ON RAPE AND KIDNAPPING WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

{¶2} On June 5, 2020, a Ross County Grand Jury returned an indictment that charged appellant with (1) one count of kidnapping in violation of R.C. 2905.01(A)(4), a first-degree felony, (2) one count of kidnapping in violation of R.C. 2905.01(A)(3), a first-degree felony, (3) one count of rape in violation of R.C. 2907.02, a first-degree felony, and (4) 16 counts of assault in violation of R.C. 2903.13, first-degree misdemeanors.

{¶3} At appellant's jury trial, Chillicothe Police Officer Christopher McGowen testified that, after he responded to a dispatch to the Valero station regarding a possible assault, he found the victim, C.D., who asked him to take her home. C.D. told McGowen that "Johnnie Kuntz" [appellant] assaulted her, but she did

not wish to file a complaint. She also told McGowen that "she couldn't get away from" appellant, he assaulted her three days ago, and she feared he would assault her again. McGowen stated "there may have been some sort of old bruising to her face," although he listed "no injuries" in his report.

{¶4} Chillicothe Police Officer Adam Steele testified he visited the victim's mother's home to follow up on the assault allegation. Steele described an exhibit and noted that the victim had "some bruising and a scratch mark around her right eye" and "a small puncture wound on her left forearm." When Steele followed up a second time, he observed that the victim also had "scratches on her lower back. There was a bruise behind her left knee. And there was also scratches, bruising on her thigh area, as same injuries I originally saw with her right eye bruise and scratch marks on her right eye and left arm puncture."

{¶5} Steele also visited the Chillicothe AmVets, near the scene of the assault, to obtain video surveillance footage. Steele testified that at one point, he observed appellant walk along the flood wall. After a brief foot chase, Steele apprehended appellant, placed him under arrest and advised him of his Miranda rights. Appellant reportedly stated, "This was bullshit and I did not rape that bitch." When Steele asked appellant about the

victim's markings, appellant responded that "he didn't know." Appellant's backpack, however, contained a "small red and black screwdriver filed to a point," "exactly what [the victim] had described that Mr. Kuntz had used on her." Steele also testified about the victim's photographs that depict bruises to her right eye, a scratch under her right eye, a scratch to her lower back, abrasions and bruises around her right eye, a puncture wound in her left forearm, bruises behind her left knee, bruises on her left thigh, bruises from her upper thigh towards her buttocks, bruises on her buttocks, and bruises and discoloration on the left side of her face.

{¶6} On cross-examination, Officer Steele acknowledged that the victim said she knew appellant for three months prior to the assault and further admitted that, on multiple days, she allowed appellant to inject her with methamphetamine. Steele further acknowledged that appellant called him and left a message prior to appellant's apprehension.

{¶7} Mark Milella, a homeless man, testified that he observed a knot on the victim's head and appellant told him the victim "fell over a bank." Milella said a Pilot gas station maintenance person offered to allow C.D. to use the Pilot's shower facility, but "the guy that was with her wouldn't let her go in by herself."

ROSS, 20CA3731

{¶8} Chillicothe AmVets Post Commander Martin Withrow testified that the alley behind the Post has a ramp for deliveries, and "if you're down in the bottom of it nobody can see ya." Withrow also provided to police security video that depicts two individuals on the ramp.

{¶9} C.D., the victim, testified that she has known appellant for approximately eight months and they are "just friends," but she also acknowledged that she had referred to him as her "boyfriend" during a three-day period early in their relationship. C.D. recalled that on May 17, 2020, she had been "up all night" using methamphetamine when a woman in a car in the "mental health" parking lot asked for a cigarette. At this point, C.D. had not seen appellant for over a month. Apparently, while C.D. sat in the woman's car, appellant walked to the car, said "come with me it's important," then "snatched me up," grabbed her arm, "yanked" her from the car and took her to a "little cement walkway" about thirty seconds away"... and "told me that I got myself in a position now and then he beat me. For about an hour and half. * * * I'm talking, he literally tried to break my leg, he head butted me, he punched me, he slapped me, raped me. * * * He threatened to kill me * * * even stabbed me with a screwdriver." After the assault, appellant told C.D. she is his slave, "he told me when to speak,

what to do, and whenever he said it I do it right and then and there." Appellant could not leave because "he threatened to kill me if I were to leave." "I had a big bump on my forehead, my nose was bleeding, he had choked me."

{¶10} During the attack, appellant used methamphetamine and heroin and threw away C.D.'s coat after he used it to wipe blood from her face. C.D. also noticed a surveillance camera, along with a sign that says, "smile you're on camera." Later, C.D.'s brother contacted law enforcement about the video that the prosecution eventually played for the jury. C.D. further testified that, from the time of the assault until two days later when she asked for help at the Valero station, she stayed with appellant because she feared for her life.

{¶11} On cross-examination, C.D. acknowledged that previously she considered appellant to be her "boyfriend" and that she engaged in multiple sexual encounters with him, "probably" more than 20 times, "it could have been" over a hundred times. C.D. further acknowledged that she did not immediately report the sexual assault that occurred on the day in question.

{¶12} Sexual Assault Nurse Examiner Janell Randolph testified that she completed the victim's sexual assault examination, photographed her injuries, took DNA swabs and noted "multiple

bruising um, to bi-both of her arms, both of her legs, * * * she had bruising to one eye, * * * she had a puncture wound to her left wrist, she had puncture wound to her left thigh also." Randolph testified that C.D. told her that "Clarence Kuntz * * * snatched her out of a friend's car about five a.m. on a Sunday morning. * * * he took her to an area behind the mental health building * * * and he beat the crap * * * out of her, * * * that she was beaten, * * * kicked, punched, * * * strangled, * * * sexually assaulted * * * forced to do sexual acts to him * * * she was then * * * taken to a viaduct in Chillicothe * * * she was tried to um, be sold by him to other people."

{¶13} Chillicothe Police Detective Christopher Fyffe played for the jury appellant's interview and, when appellant told Fyffe that the victim slapped him, he said he then he slapped her. The surveillance video, however, did not match appellant's statement. Fyffe also confirmed that appellant and the victim visited urgent care two days before the assault. At this juncture, the state rested and the trial court also overruled appellant's Crim.R. 29 motion for judgment of acquittal.

{¶14} The defense presented its case and called several witnesses, including appellant's brother, Chris Kuntz, who testified that appellant and C.D. visited his house "every two to

three days." Kuntz said they came to his house on May 15, 2020, with another younger girl, and that C.D. appeared to be "on something." Kuntz also said he was familiar with the allegations against his brother, that he talked to him "once in a while and it was on Facebook that they were looking for him for it." On cross-examination, Kuntz acknowledged he was unsure of the exact date appellant and the victim visited his home. Also, Kuntz stated he knew about appellant's 2011 trafficking drug convictions.

{¶15} Clyde Johnson testified that he knows appellant because "my cousin * * * has a baby with one of his brothers, or something like that." Johnson said appellant "slept out in the hallway with his girlfriend (C.D.), I think one or two nights, maybe." Johnson thought it was "May 17th, or 18th, I think."

{¶16} Alyssa Stevens, Clyde Johnson's girlfriend, testified she met appellant through her family and met C.D. through appellant. Stevens stated that C.D. and appellant stayed in the hallway of their apartment two nights during the time period in question.

{¶17} Nurse Practitioner William Bedillion, Jr. testified that, two days before the incident, he worked at Family Urgent Care when appellant and C.D. visited and the two appeared "almost a bit jolly and giddy with each other."

{¶18} After hearing the evidence and counsels' arguments, the

ROSS, 20CA3731

jury found appellant guilty as charged in the indictment.  At sentencing, the trial court: (1) merged counts one (kidnapping) and two (kidnapping), (2) sentenced appellant to serve a minimum term of 10 years and a maximum term of 15 years in prison on count one, (3) sentenced appellant to serve a minimum of ten years and maximum of 15 years on count three (rape), (4) sentenced appellant to serve 90 days each on counts four through nineteen (assault), to be served concurrently to one another, (5) ordered counts one and three to be served concurrently to one another, as well as concurrently to counts four through nineteen, (6) found appellant to be a Tier III Sex Offender, (7) advised appellant of the Reagan Tokes law, and (8) sentenced appellant to serve a mandatory five-year post-release control term.  This appeal followed.

I.

**{¶19}** In his first assignment of error, appellant asserts that the trial court erred by failing to merge his convictions for kidnapping and rape because, appellant argues, those offenses stemmed for the same conduct, with a single animus, and with similar import and significance.  In particular, appellant argues that his purpose in committing the kidnaping offense was to engage in sexual activity with the victim against her will and this animus is the same as in the rape offense because appellant purposely

compelled the victim to submit to sexual conduct by force or threat of force.

{¶20} In response, the state argues that appellant removed the victim from a car on "one street and dragged her to a secluded location some ways away," "tortured, assaulted, and threatened her for an hour and a half before and during the rape and did not permit her to leave when it was completed." Afterward, the state points out that appellant took the victim "to various locations throughout the city, from the Floyd Simantel, to the AmVets, to at one time the Pilot, to another near the viaduct under the bridge and another to the Valero Gas Station - the movement is substantial so as to demonstrate a significance independent of the other offense." The state thus contends that, "[r]ather than a brief kidnapping," * * * "the video in the case lasted a total of an hour and half, and the kidnapping lasted almost three days, when the victim was finally able to get away and call police." Further, the state argues that appellant used force to perpetuate the sexual conduct - first forcing appellant out of a car and into a secluded area behind a building, then using force and threats and physical torture for almost an hour and a half during the rape. Thus, the state contends the victim's movement from the car to the concealed AmVets alleyway was more than incidental; rather, it substantially

increased the risk of harm by taking C.D. from a public place,
where exposure could limit the harm, to a place where appellant
could commit the offense unimpeded.  Therefore, the state argues,
the restraint and force used to drag the victim to a secluded
location is separate and distinct from the force exercised during
the rape.  Consequently, the state maintains that appellant's rape
and kidnapping convictions are not allied offenses.

{¶21} "R.C. 2941.25 'codifies the protections of the Double
Jeopardy Clause of the Fifth Amendment to the United States
Constitution and Section 10, Article I of the Ohio Constitution,
which prohibits multiple punishments for the same offense.'" *State
v. Osman,* 4th Dist. Athens No. 13CA22, 2014-Ohio-294, ¶ 17, quoting
*State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d
923, ¶  23; *State v. Jones*, 4th Dist. Hocking Nos. 20CA2, 20CA3,
20CA4, 2021-Ohio-2601, ¶ 26.  R.C. 2941.25, the allied offense
statute, outlines when a trial court may impose multiple
punishments:

> (A) Where the same conduct by defendant can be construed
> to constitute two or more allied offenses of similar
> import, the indictment or information may contain counts
> for all such offenses, but the defendant may be convicted
> of only one.
>
> (B) Where the defendant's conduct constitutes two or more
> offenses of dissimilar import, or where his conduct results
> in two or more offenses of the same or similar kind
> committed separately or with a separate animus as to each,

the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶22}** In general, an appellate court should apply a de novo review of a trial court's R.C. 2941.25 merger determination. *State v. Williams,* 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. Appellate courts should therefore "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.* at ¶ 26.

**{¶23}** In the case sub judice, appellant and the state agreed that the two kidnapping offenses merged. Appellant, however, did not raise at sentencing the issue of merger of the kidnapping and rape offense. Thus, appellant forfeited all but plain error. *State v. Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21, 28. Crim.R. 52(B) defines plain error as, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To establish plain error, appellant must show that "but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16. "To constitute plain error under Crim.R. 52(B), the

defendant must demonstrate (1) an error, i.e., a deviation from a legal rule, (2) that the error constitutes an obvious defect in the trial proceedings, and (3) that the error must have affected substantial rights, i.e., the error must have affected the outcome of the trial." *State v. Wycuff*, 4th Dist. Pickaway No. 19CA28, 2020-Ohio-5320, ¶ 13, citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. Courts take notice of plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Rogers* at ¶ 23, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. *See also State v. Lewis*, 4th Dist. Ross No. 14CA3467, 2015-Ohio-4303, ¶ 9; *Wycuff* at ¶ 13. However, because a trial court's duty to merge allied offenses is mandatory, not discretionary, the failure to merge allied offenses affects a substantial right. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923. Consequently, a failure of a trial court to merge allied offenses when the record is clear that multiple offenses are allied offenses under R.C. 2941.25 constitutes plain error.

{¶24} Recently, we observed in *State v. Conrad*, 4th Dist. Hocking No. 18CA4, 2019-Ohio-263 that the Supreme Court of Ohio

examined the allied offense doctrine in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-994, 34 N.E.3d 892, and crafted a tripartite test to determine when multiple criminal offenses must merge under R.C. 2941.25. "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors - the conduct, the animus, and the import." *Id.* at paragraph one of the syllabus. Further, "[t]wo or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.,* paragraph two of the syllabus.

**{¶25}** The *Ruff* court wrote that "when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? And (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions." *Ruff* at ¶ 31. Further, unlike at trial when the state bears the burden of proof, at sentencing "[t]he defendant

bears the burden of establishing his entitlement to the protection, provided by R.C. 2941.25, against multiple punishments for a single criminal act." *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18, quoting *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987); *Conrad* at ¶ 35.

**{¶26}** In *Jones*, *supra,* 2021-Ohio-2601, the Supreme Court of Ohio again addressed the merger of kidnapping and rape convictions discussed in *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979), and recognized that "implicit within every forcible rape R.C. 2907.02(A)(1) is a kidnapping." *Id.* at 130. *Logan* instructed whether the rape and kidnapping convictions should merge:

> The primary issue * * * is whether the restraint or movement of the victim is merely incidental to the separate underlying crime or, instead, whether it has a significance independent of the other offense. In the instant case, the restraint and movement of the victim had no significance apart from facilitating the rape. The detention was brief, the movement was slight, and the victim was released immediately following the commission of the rape. In such circumstances, we cannot say that appellant had a separate animus to commit kidnapping.

*Id.* at 135.

**{¶27}** "Ohio courts still apply the test found in [*Logan*] to determine whether rape and kidnapping convictions merge for sentencing even though this test predates *Ruff*." *State v. Thacker*, 4th Dist. Lawrence No. 18CA21, 2020-Ohio-4620, ¶ 125. Thus, this

court adopted the *Logan* "guidelines" to determine when kidnapping and similar offenses - like rape- are committed with the same animus and must merge. *Id.*, quoting *Logan* at syllabus. "Therefore, kidnapping and rape convictions merge if the restraint of the victim is merely incidental to the rape, but do not merge if the restraint subjected the victim to a harm beyond that of the rape." *Jones, supra,* at ¶ 30.

{¶28} When examining this issue, it appears that merger cases vary from a kidnapping that is incidental to a rape when the victim's movement is slight, occurs close in time to the rape, and facilitates the rape, to cases at the other end of the spectrum when the kidnapping is not incidental to the rape because the victim's movement is significant, occurred longer in time from the rape, and occurred other than to facilitate the rape. "More than once the Ohio Supreme Court has recognize[d] that this analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases." *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 32, quoting *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52; *State v. DeWees,* 2018-Ohio-1677, 111 N.E.3d 334 (11th Dist.) ¶ 43.

{¶29} For example, in *Jones*, *supra,* at ¶ 32, the defendant forcibly pinned the victim on the stairs, restrained her liberty,

and demanded by threat of force that she engage in a sex act.  The evidence revealed that the kidnapping involved a relatively brief restraint with no asportation, committed to facilitate the rape, and did not subject the victim to additional danger aside from the rape.  Furthermore, in *State v. Merz*, 1st Dist. Hamilton No. C-200152, 2021-Ohio-2093, the defendant, under the guise of taking his stepdaughter arrowhead-hunting, drove to a remote location, began to kiss her neck, pushed her into a truck, forced himself on her and groped her.  The First District applying *Logan,* concluded that the defendant's gross sexual imposition and abduction convictions should merge.  The court concluded that the abduction was "merely incidental" to the gross sexual imposition and the defendant did not have a separate animus for the abduction because his immediate motive in restraining his stepdaughter was to sexually assault her. *Id.* at ¶ 14.  Consequently, the gross sexual imposition and abduction offenses are not of dissimilar import based on a lack of separate and identifiable harm, and not committed separately. *Id.* at ¶ 15-16.

{¶30} Other examples of cases that include kidnapping incidental to rape or other sexual assault offenses include *State v. Lundy*, 8th Dist. Cuyahoga No. 105119, 2017-Ohio-9155, ¶ 33-34 (act brief and movement slight so kidnapping incidental to the rape and no separate

animus for kidnapping); *State v. Johnson*, 2014-Ohio-4750, 22 N.E.3d 249, ¶ 108 (3d Dist.) (moving victim from alley to porch demonstrated victim's restraint and movement had no significance apart from facilitating rape); *State v. Pore*, 5th Dist. Stark No. 2011-CA-00190, 2012-Ohio-3660 (kidnapping and rape merge when defendant threatened victim with knife, moved her to bedroom to undress, moved to living room to lock door, then moved to bedroom for rape); *State v. Bolton*, 8th Dist. Cuyahoga No. 96385, 2012-Ohio-169 (gross sexual imposition and kidnapping merge because victim's movement from hallway to bedroom incidental to gross sexual imposition).

**{¶31}** Many cases, however, support the proposition that kidnapping and rape should not merge when a kidnapping serves the distinct purpose of concealment of the rape. When a defendant moved the victim from an outside stairway into his apartment, then to his bedroom, the Supreme Court of Ohio found a separate animus for the kidnapping. *State v. Rogers*, 17 Ohio St.3d 174, 181–182, 478 N.E.2d 984 (1985), vacated on other grounds, *Rogers v. Ohio*, 474 U.S. 1002, 106 S.Ct. 518, 88 L.Ed.2d 452 (1985).

**{¶32}** In *State v. DeWees*, 2018-Ohio-1677, 111 N.E.3d 334 (11th Dist.), the defendant grabbed the victim's hair and neck, dragged her up an incline six feet from a walking trail, then attempted to

rape her. The Eleventh District held that the kidnapping and attempted rape resulted from distinct conduct and motivation because the act of dragging the victim neither directly facilitated nor was immediately motivated by the desire to commit the rape, but instead served the purpose of secretive confinement. *Id.* at ¶ 44.

{¶33} In *State v. Zanders*, 8th Dist. Cuyahoga No. 99146, 2013-Ohio-3619, the defendant dragged the victim by her hair across a street, through an open field and to a secluded "cubbyhole" in a yard behind a building. The Eighth District concluded that this restraint and movement was not incidental to the rape. Instead, the restraint and force used to drag the victim to a secluded location was separate and distinct from the force exercised during acts of the rape. Indeed, the victim's removal to a secluded area subjected the victim to a substantial increase in her risk of harm, separate and apart from the risk involved in the rape.

{¶34} In *State v. Merryman*, 4th Dist. Athens No. 12CA28, 2013-Ohio-4810, the defendant moved the victim from hallway, to bathroom, then to a locked stall before he committed the rape. This court concluded that the defendant "could have performed oral sex upon the victim in the hallway but Merryman had a separate animus for the kidnapping, i.e., he wanted his actions to be secret; this separate animus supports a separate conviction for kidnapping." *Id.* at ¶ 52.

Consequently, in *Merryman* we concluded that the offenses of rape and kidnapping did not merge. *See also, State v. Helms,* 7th Dist. Mahoning No. 15 MA 0183, 2017-Ohio-4383 (defendant drove victim to different location for rape, thus rape and kidnapping committed with separate animus); *State v. Terry*, 10th Dist. Franklin No. 15AP-176, 2015-Ohio-3847, ¶ 16 (victim dragged around corner from residence and forced into dark, open garage - " movement of the victim prior to the rape, although not long in duration, * * * was not merely incidental to the rape"); *State v. Howard,* 9th Dist. Lorain No. 13CA010372, 2014-Ohio-3373, ¶ 66 (kidnapping and rape committed separately, or with separate animus, when defendant accosted child victim on public street, demanded she go with him or he would shoot her, then "took her to the privacy of his home, where no one else was present. Secretive confinement may signify a separate animus."); *State v. Dean*, 2018-Ohio-1740, 112 N.E.3d 32 (6th Dist.), ¶ 65-66 (victim suffered separate harm from separate animus from rape when defendant grabbed victim on the street, moved several city blocks after showed gun, then confined her in abandoned house's dark patio before the rape); *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 118 (evidence supports convictions for rape and kidnapping when defendant abducted victim, took her to empty apartment at other location then raped and killed her); *State*

*v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, 172 N.E.3d 8, ¶ 110 (defendant lured victim to a house to give her clothing but then raped her - kidnapping and rape do not merge because victim kidnapped by act of deception significantly independent from the asportation incidental to the rape).

**{¶35}** In the case sub judice, appellant concedes that the victim "was arguably restrained in the rampway behind the AmVets for approximately two hours," but contends this restraint was merely incidental (i.e., had no separate animus) for the rape. Thus, the central question is whether appellant harbored a separate animus for the two offenses. "Animus" means "'purpose, or more properly, immediate motive' and 'requires us to examine the defendant's mental state in determining whether two or more offenses may be chiseled from the same criminal conduct.'" *Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, at ¶ 86, quoting *State v. Logan*, 60 Ohio St.2d 131, 397 N.E.2d 1345 (1979). To determine animus, or a defendant's motive or purpose, a court must dissect the facts and circumstances in evidence, including the means used to commit the offense. *Id.*

**{¶36}** Our review of the evidence adduced at trial reveals that the victim sat in a parked car when appellant "grabbed" her arm and "pulled [her] out of the car"..."he just grabbed my arm and yanked,"

then took the victim to a "little cement walkway" behind the AmVets building "like thirty seconds away," to a secluded area where the rape occurred.  We believe that this conduct indicates a separate animus for the kidnapping and rape offenses.  Here, appellant grabbed the victim, removed her from a car in a parking lot and forced her some distance to a rampway in an alley behind a building.  Once again, as the AmVets witness stated about that location,  "if you're down in the bottom of it [the ramp way] nobody can see ya."  Like *Zanders*, in the case at bar appellant moved the victim from a public place to a secluded location, then confined and assaulted her.  We believe that, under these facts, the victim, like the victim in *Zanders*, suffered harm separate and apart from the rape when appellant moved the victim to a secluded location before he committed the rape.  We believe that the case sub judice is more similar to *DeWees*, *supra,* 2018-Ohio-1677, 111 N.E.3d 334 (11th Dist.) and the line of cases that emphasize secretive confinement.  When an offender moves a victim from a public place to a secluded area, the removal limits exposure and subjects the victim to a substantial increase in the risk of harm separate and apart from the harm involved in the rape.

{¶37} Therefore, because a separate animus exists for the rape and kidnapping offenses, the offenses should not merge.  Although

the kidnapping and rape convictions involved a single victim, the harm caused by the two offenses is separate and identifiable. Because appellant's conduct shows that appellant committed these offenses with separate animus, under *Ruff* the offenses should not merge. The fact that an offender may have the ultimate goal to commit rape and formulated a plan of action in furtherance of that goal should not absolve an offender of responsibility for all other crimes committed in the furtherance of that goal.

{¶38} Thus, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## II.

{¶39} In his second assignment of error, appellant asserts that he did not receive the effective assistance of counsel when his counsel failed to argue that his convictions are allied offenses of similar import. However, because we concluded that appellant's convictions do not constitute allied offenses of similar import, this assignment of error is moot.

{¶40} Thus, based upon the foregoing reasons, we overrule appellant's second assignment of error.

## III.

{¶41} In his third assignment of error, appellant asserts that his rape and kidnapping convictions are against the manifest weight

of the evidence. Although appellant does acknowledge that sufficient evidence supports his convictions, he nevertheless maintains they are against the manifest weight of the evidence. In particular, appellant argues that the victim's testimony is "riddled with inconsistencies, evasion, and contradictions," and, thus, his convictions cannot be fairly said to have attained the high degree of probative force and certainty required for a criminal conviction.

{¶42} In *State v. Smith,* 2020-Ohio-5316, 162 N.E.3d 898, (4th Dist.) ¶ 30*,* this court wrote that to determine whether a criminal conviction is against the manifest weight of the evidence, "we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary." *Smith* at ¶ 31, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119; *State v. Brown,* 4th Dist. Athens No. 09CA3, 2009-Ohio-5390. In order to satisfy this standard, the state must introduce substantial evidence on all the elements of an offense so the jury can find guilt beyond a reasonable doubt. *See State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304, syllabus (1988).

{¶43} In the case sub judice, the state argues that it adduced ample evidence at trial to prove that appellant kidnapped C.D. when he pulled her from a parked car, forced her to a secretive place some distance away in an area not visible to the general public, then threatened her, assaulted her, stabbed her with a screwdriver, then further restrained her and raped her. The state claims that ample evidence of rape and kidnapping exists because appellant exerted force for 45 minutes while he assaulted her multiple times, including strangling her, pushing her against a wall, picking her up by her hair, shaking her, punching her stomach, slapping her, attempting to break her leg and telling her she is his sex slave.

{¶44} Appellant, however, contends that C.D.'s often inconsistent testimony, raises questions about her memory and credibility. After our review we recognize that, although the victim's testimony may have been, at times, inconsistent, this argument ignores other ample evidence, including surveillance video and witness testimony. Furthermore, while appellant argues that C.D. minimized the fact that she had engaged in sexual relations with appellant on prior occasions, the occasion relevant to the case at bar is what occurred on the date in question in this particular case. Obviously, the jury heard the witness testimony and opted to believe the state's version of the facts, that appellant kidnapped

and raped the victim. A jury, sitting as the trier of fact, may choose to believe all, part or none of the testimony of any witness. Here, the jury had the opportunity to observe all witnesses and their testimony, including the victim's testimony, and to assess the credibility of each witness. Therefore, in the case sub judice we cannot conclude that the jury lost its way when it chose to credit C.D.'s testimony over appellant's. Once again, although we recognize that the record does reveal some inconsistencies, none are so significant as to call the jury's verdict into doubt. *State v. Picklesimer,* 4th Dist. Pickaway No. 14CA17, 2015-Ohio-1965, ¶ 11, citing *State v. Weiss*, 4th Dist. Athens No. 09CA30, 2010-Ohio-4509, ¶ 13.

{¶45} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                              Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal

commences from the date of filing with the clerk.